IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PATRICIA KRAFT**<br>    *Plaintiff* | |
| v. | Civil Action No. 4:20-cv-04015 |
| **TEXAS A&M UNIVERSITY, TEXAS A&M UNIVERSITY SYSTEMS and PETER DAVID BATY**<br>    *Defendants* | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE COURT**:

    **COMES NOW, PATRICIA KRAFT**, Plaintiff, and files this original complaint complaining of Texas A&M University, Texas A&M University Systems and Peter David Baty, defendants, and would show the following:

### I. PARTIES

1.    Plaintiff Patricia Kraft, hereinafter, is an individual residing in Brazos County, Texas.

2.    Defendant Texas A&M University, hereinafter, "TAMU", is a governmental entity in Brazos County, Texas and may be served by serving its President, Mr. Michael K. Young, at 1246 TAMU, Texas A&M University, College Station, Texas 77843.

3.    Defendant Texas A&M University System, hereinafter "TAMUS", is a governmental entity in Brazos County, Texas and may be served with process by serving its Chancellor, Mr. John Sharp, Moore/Connally Building, 7th Floor, 201 Tarrow, College Station, Texas 77840.

1

4.     Defendant Peter David Baty is an individual residing in Brazos County, Texas and may be served with process by personal service at the 15089 FM 2154, College Station, Texas 77845.

## II.  JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court  is proper under 28 U.S.C. § 1331, as it arises under and pursuant to Title VII of the Civil Rights Act of 1964, as amended.   Additionally, compensatory damages, punitive damages and court costs and attorney's fees are sought pursuant to Title VII of the Civil Rights Act of 1964, as amended.

6.     On or about January 27, 2020, Patricia Kraft filed a timely charge alleging sexual discrimination and harassment with the Equal Employment Opportunity Commission, hereinafter "EEOC".

7.     On August 31, 2020, the EEOC issued a "Right to Sue" letter to Patricia Kraft.

8.     All conditions precedent to the initiation of litigation have been fulfilled.

9.      The all or a substantial part of incidents made basis of this litigation occurred within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division and Defendants reside in this judicial district.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III.  FACTS

10.    From May, 2017 and at all times relevant to this matter, Patricia Kraft was an employee of TAMU in the Transportation Services Department.  During the times of all incidents reflected herein, Ms. Patricia Kraft was not a student at TAMU, however, she was a student at a nearby university.  Ms. Patricia Kraft worked in the TAMU Transportation Services Department, at least,

three days a week. TAMUS is affiliated with TAMU and TAMUS is responsible for certain policies of TAMU and oversight of portions of TAMU's operations. TAMU and TAMUS, at all times, owned and controlled the premises where Patricia Kraft was employed.

11.  During all times which Patricia Kraft was employed by TAMU, Peter David Baty, hereinafter "Baty", was a training supervisor for the Transportation Services Department and interacted with Patricia Kraft and others on a daily basis in the TAMU offices of the Transportation Services Department. When Patricia Kraft was initially hired, Baty was her direct supervisor. Later in her employment, Baty had supervisory (training) capacity over Patricia Kraft and had authority to direct (and did direct) Patricia Kraft to perform tasks in the office. Baty had been employed with TAMU for over ten (10) years. Prior to May 8, 2019, Baty frequently made sexually suggestive unwelcome remarks and innuendo with female staff in the Transportation Services Department, including Plaintiff, which caused Plaintiff discomfort and unreasonably interfered with her work due to the intimidating and offensive nature of the office environment. Despite the general knowledge of Baty's behavior in the office, TAMU and TAMUS took no action to deter him.

12.  On or before May 8, 2019, a video camera was located in the sole women's restroom in the Texas A&M Transportation Services Department building. The camera was located underneath a counter in the women's bathroom, facing toward the toilet. The discovery of the camera occurred after an employee of TAMU/TAMUS conducted a review of video recordings for another issue involving misappropriation of keys. During the review of the video, Baty was observed on a camera to enter the women's bathroom during the morning hours on at least one occasion. Defendants failed to monitor this camera on a regular basis or review the recordings

prior to this time or Baty's actions would have been discovered earlier. The camera used by Baty was later discovered by a physical inspection of the women's restroom.

13. Within a few days, it was determined that Baty had placed the camera in the women's bathroom and had done so on a number of occasions. Baty placed the camera at an angle to record women using the restroom and in various states of undress. Baty only videotaped the women's restroom and the recordings were clearly of a sexual nature, as the camera was directed toward the toilet to capture women as they disrobed and used the toilet. As this was the only bathroom in this building available to Patricia Kraft while at work, she used it every day that she had worked in the TAMU/TAMUS facility.

14. Baty was suspended and later resigned from TAMU.

15. For at least a year prior to May 8, 2019, Baty, on a regular basis, placed a camera in the women's restroom under the counter. The camera would record for a period of days. Later, Baty would return to the women's restroom and retrieve the camera and save the video recordings from the camera memory to another device or computer. Baty made recordings a large number of times. The "memory card" on the recovered camera contained over seven hundred (700) video recordings, each lasting approximately ten (10) minutes, many contained images of Patricia Kraft.

16. In total, based upon information and belief, Baty was found in possession of approximately fifteen thousand (15,000) videos from the bathroom which included the camera memory card, other electronic devices and spanned approximately fifty-seven (57) gigabytes of memory on a computer used by Baty. Additionally, another two (2) gigabytes of photographs were also located on the computer, which depending on image quality, would amount to between 400 and 2,000 photographs. At least eighty (80) women appear on these video tapes and photographs. The camera, memory card and computer are in the possession of Texas A&M University Police

Department and, aside from a single video "still photograph" of Plaintiff, have not been made available to Plaintiff. Aside from the Fleet Department, no attempt to investigate any other restroom or other location for additional cameras was made by TAMU/TAMUS.

17.     After the fact that Baty had been recording in the women's restroom became public, TAMU and TAMUS initiated a series of meetings with women employed in the Transportation Services Department. In the initial presentations, on or about May 22, 2019, TAMU and TAMUS provided several speakers and information about the incident. During this presentation, at least one TAMU and TAMUS representative stated that Title IX would be likely be unavailable and, further, that since Baty had resigned, it was unlikely Title IX remedy would be available. TAMU and TAMUS, despite the failures in supervision of Baty, the presence of a camera in a women's bathroom and Baty's actions, indicated that they would not conduct an investigation as it was being handled by TAMU police. Additionally, TAMU and TAMUS never advised or warned employees, including Plaintiff, or students under their alert system that a camera had been placed in a restroom.

### IV.    CAUSES OF ACTION

*Count 1*     VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e), et seq. SEX DISCRIMINATION

18.     Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

19.     TAMU was the employer of Patricia Kraft within the meaning of Title VII.

20.     Patricia Kraft, in violation of Title VII, was subjected to unwelcome harassment and discrimination on the basis of her gender and of a sexual nature as a result of the incidents described hereinabove. The harassment was objectively and subjectively offensive to a reasonable person.

21.     TAMU and TAMUS engaged in an intentional, systemic, pattern and/or practice of discrimination by, among other things: subjecting Patricia Kraft to differential treatment and

discriminating against her; minimizing, ignoring, mishandling, or otherwise failing to adequately respond to complaints and incidents of sex discrimination, including harassment, and the hostile work environment; sexual harassment, and/or a hostile work environment; subjecting Patricia Kraft to a hostile work environment; failure to supervise and enforce policy; and other forms of discrimination.

22. TAMU's and TAMUS's policies, practices, and procedures have a disparate impact on Patricia Kraft including, inter alia: TAMU's and TAMUS's policy for reporting sexual harassment, which disadvantages and discriminates against women who seek to report instances of harassment; and TAMU's and TAMUS's practice of minimizing, ignoring, mishandling, or otherwise failing to adequately respond to complaints and incidents of sex discrimination and sexual harassment, which allows a culture of gender-based harassment and discrimination to continue unchecked. These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Patricia Kraft with respect to the terms and conditions of her employment. Additionally, TAMU and TAMUS's failure to train, supervise and enforce any policies which it did have rendered them ineffective and encouraged the events which are described herein and intimidation of Patricia Kraft as no response or punitive actions were taken against those who violated said policies, practices and/or procedures. TAMU and TAMUS, by inaction, ratified the behavior of Baty and, further, encouraged behavior, such as, placement of cameras in the women's bathroom.

23. As a result of this disparate treatment and disparate impact discrimination, TAMU and TAMUS has treated Patricia Kraft differently from and less favorably than her male colleagues. This discrimination, as well as that described hereinabove, altered the terms and conditions of Patricia Kraft's employment.

24.     At all relevant times, Baty was subject to the control and supervision of TAMU and/or TAMUS and was provided with supervisory powers over training and persons in the Transportation Services Department, such as, Plaintiff.

25.     TAMU and TAMUS had a general and specific duty to exercise reasonable care in training, supervision, training, retention and investigation of its employees.

26.     Training on all legal, regulatory, and university requirements that its supervisors would foreseeably be responsible for adhering to in the scope of their job duties, including sexual harassment and discrimination laws, privacy and video recording laws, and all related TAMU and TAMUS protocols, procedures, and workplace policies.

27.     Upon information and belief, TAMU and TAMUS training programs, classes and disciplinary process is created by, for, and at the direction of the officers of TAMU and TAMUS and they retained and exercised final control and decision-making authority over the training, investigation and disciplinary procedures utilized by supervisors in the Transportation Services Department.

28.     Upon information and belief, not only did TAMU and TAMUS's training, lack of supervision and failure to supervise, investigate, and discipline Baty create a culture in which he believed his behavior, as described herein, was acceptable in conformance with TAMU and TAMUS safety and security protocols, workplace culture and university policy.

29.     TAMU's and TAMUS's decision not to properly train, supervise, investigate and discipline Baty not only violated its duties to Patricia Kraft, and other employees to protect them from improper and illegal conduct by its employees and management on its property and premises, but its intentional and willful failure to take affirmative actions to immediately and impartially investigate Baty without bias after learning of his actions constituted an acceptance, ratification

and continuance of his behavior as set forth herein, which continues to cause Plaintiffs to suffer further, separate damages for which it is directly liable. Additionally, the failure to enforce policies, procedures and protocols amounted to ratification of actions by Baty and, further, encouraged behavior, such as, placement of cameras in the women's bathroom.

30. TAMU's and TAMUS's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Patricia Kraft, entitling Patricia Kraft to punitive damages.

31. Because of the continuous nature of TAMU's and TAMUS's discriminatory conduct, which persisted throughout the employment of Patricia Kraft, she is entitled to application of the continuing violations doctrine to all violations alleged herein. By reason of TAMU's and TAMUS's discrimination, Patricia Kraft is entitled to all legal and equitable remedies available for violations of Title VII, including punitive damages.

32. As a result of TAMU's and TAMUS's conduct alleged in this Complaint, Patricia Kraft has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, including interest.

33. As a further result of TAMU's and TAMUS's unlawful conduct, Patricia Kraft has suffered and continue to suffer, inter alia, impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Patricia Kraft is entitled to recover damages for such injuries from TAMU and TAMUS under Title VII.

34. Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

> Count 2  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. § 2000e, et seq. HOSTILE WORK ENVIRONMENT

35. Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

36. TAMU was an employer of Patricia Kraft within the meaning of Title VII.

37. Patricia Kraft was subjected to unwelcome harassment on the basis of her sex, including but not limited to inappropriate, offensive, and/or discriminatory gendered actions, statements, comments and video recording. This unwelcome harassment was both subjectively and objectively hostile and/or abusive.

38. The harassment Patricia Kraft was subjected to was so severe or pervasive as to alter the terms and conditions of her employment and create a hostile and/or abusive working condition. Patricia Kraft, while working, was subjected to unwelcome comments by Baty, a supervisor, over the course of her employment and, due to his position, she was intimidated and felt unable to act to stop his actions, which were frequent and also occurred with other women in the office. During this time period, Baty was not reprimanded nor was any action taken by other supervisors and his superiors who were aware of his conduct. Additionally, during her time as an employee, Patricia Kraft was frequently and repeatedly recorded with the camera placed in the women's restroom by an emboldened Baty without her knowledge due to her gender and the discriminatory conduct on the basis on her gender that was physically threatening, humiliating, and/or offensive.

39. After becoming aware of the recording and the suspension and termination of Baty, Patricia Kraft continued to suffer a hostile work environment as, during meetings about the incident, statements by representatives of TAMU and TAMUS indicated that no investigation was forthcoming by TAMU and TAMUS, but rather the TAMU police were left to pursue criminal matters. TAMU/TAMUS further commended the Transportation Department for doing a "great

9

job" by locating a camera which had been used in the women's bathroom for at least a year. No mention was made by TAMY/TAMUS of Baty's other behavior described herein. TAMU/TAMUS refused responsibility over any portion of this matter. As the intended subjects of Baty's recordings were women and were made in the women's bathroom, TAMU's and TAMUS's meetings and actions and statements taken therein were, by their very nature, directed solely toward women, including Patricia Kraft. This conduct, in presenting TAMU's and TAMUS's representatives to deny any liability or responsibility, was designed to intimidate and create a hostile environment to prevent action by these women, the action was so extreme that it unreasonably interfered with Patricia Kraft's ability to work with TAMU and amounted to a change in the terms and conditions of employment, and resulted in psychological harm. Additionally, in making these statements, TAMU and TAMUS also ratified, at least in part, the harassing behavior of Baty, a supervisor, during his employment.

40. As a result of the harassment, Patricia Kraft suffered an adverse employment action, up to and including resignation of her employment.

41. TAMU, TAMUS and its employees with supervisory authority knew or reasonably should have known of the harassment that permeated the workplace but failed to address it or take steps to prevent and correct the harassment. TAMU and TAMUS failed to exercise reasonable care to prevent and correct the harassment and hostile work environment, even after the recordings were discovered.

42. TAMU and TAMUS created and perpetuated a hostile work environment by, among other things, engaging in a pattern and practice of minimizing, ignoring, mishandling, or otherwise failing to adequately respond to complaints and incidents of sex discrimination and sexual harassment; implementing and maintaining a discriminatory policy for reporting sexual

harassment which disadvantages and discriminates against women who seek to report instances of harassment; failing to properly train, supervise and reprimand incidents of sex discrimination and discouraging women from reporting sexual harassment and/or a hostile work environment.

43. TAMU's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Patricia Kraft, entitling Patricia Kraft to punitive damages.

44. Because of the continuous nature of TAMU's and TAMUS's discriminatory conduct, which persisted throughout the employment of Patricia Kraft, Patricia Kraft is entitled to application of the continuing violations doctrine to all violations alleged herein.

45. By reason of TAMU's and TAMUS's discrimination, Patricia Kraft is entitled to all legal and equitable remedies available for violations of Title VII, including punitive damages.

46. As a result of TAMU's and TAMUS's conduct alleged in this Complaint, Patricia Kraft has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, including interest.

47. As a further result of TAMU's and TAMUS's unlawful conduct, Patricia Kraft has suffered and continues to suffer, inter alia, impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Patricia Kraft is entitled to recover damages for such injuries from TAMU and TAMUS under Title VII.

48. Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

      *Count 3*  FAILURE TO TRAIN, FAILURE TO SUPERVISE
             AND IMPROPER RETENTION

49. Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

50. At all relevant times, Baty was subject to the control and supervision of TAMU and/or TAMUS and was provided with supervisory powers over training and persons in the Transportation Services Department, such as, Plaintiff, as well as, supervisory powers and authority after the training period ended.

51. Baty engaged in wrongful tortious actions that were not part of his job description or in furtherance of the interest and objectives of TAMU or TAMUS, although he was otherwise acting within his course and scope of employment, including using his access to the building, keys and accessibility during early morning hours, as well as, at all other times for improper, immoral and illegal purposes.

52. All actions occurred on TAMU's and TAMUS's work premises during work hours, in which, Baty also served as a supervisor of Patricia Kraft.

53. TAMU and TAMUS had a general and specific duty to exercise reasonable care in training, supervision, training, retention and investigation of its employees.

54. Training on all legal, regulatory, and university requirements that its supervisors would foreseeably be responsible for adhering to in the scope of their job duties, including sexual harassment and discrimination laws, privacy and video recording laws, and all related TAMU and TAMUS protocols, procedures, and workplace policies.

55. Upon information and belief, TAMU and TAMUS training programs, classes and disciplinary process is created by, for, and at the direction of the officers of TAMU and TAMUS and they retained and exercised final control and decision-making authority over the training,

investigation and disciplinary procedures utilized by supervisors in the Transportation Services Department.

56. Upon information and belief, not only did TAMU and TAMUS's insufficient training, lack of supervision and failure to supervise, investigate, and discipline Baty create a culture in which he believed his behavior, as described herein, was acceptable in conformance with TAMU and TAMUS safety and security protocols, workplace culture and university policy.

57. TAMU's and TAMUS's decision not to properly train, supervise, investigate and discipline Baty not only violated its duties to Patricia Kraft, and other employees to protect them from improper and illegal conduct by its employees and management on its property and premises, but its intentional and willful failure to take affirmative actions to immediately and impartially investigate Baty without bias after learning of his actions constituted an acceptance, ratification and continuance of his behavior as set forth herein, which continues to cause Plaintiffs to suffer further, separate damages for which it is directly liable. Additionally, the failure to enforce policies, procedures and protocols amounted to ratification of actions by Baty.

58. As a result, each of the above referenced issues is a proximate cause to Plaintiff's injuries and Plaintiff is entitled to damages in an amount to be determined at trial.

### Count 4     INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

60. Baty intentionally, or with reckless indifference to Patricia Kraft's, took actions which he knew would cause severe emotional distress to Patricia Kraft by either actually watching and recording her on multiple occasions as she disrobed and used the sole women's restroom in the

Transportation Services Department. He recorded not just her, but every woman and, potentially, female minor or child who used this restroom.

61. Patricia Kraft became physically ill, mental and emotionally distressed at the realization that Baty had illegally recorded her in states of undress and while and using the toilet.

62. Additionally, after Baty's actions became known to Patricia Kraft, TAMU and TAMUS made efforts to dissuade action by her, by indicating that no investigation was forthcoming by TAMU and TAMUS and, further, by commending the Transportation Department for doing a "great job", despite the camera having been used in the same place for more than a year.

63. As a result of her physical illness, mental and emotional distress, Patricia Kraft sought treatment and personal counseling for the immediate and ongoing physical, emotional, and mental injuries that were proximately caused by Defendants.

64. Baty's conduct was so extreme and outrageous that it exceeded all bounds usually tolerated by decent society and is a proximate cause of the ongoing and unresolved physical, emotional and mental distress suffered by Patricia Kraft. Baty's intentional and reckless acts occurred exclusively within the scope of his employment and official duties with TAMU and/or TAMUS, and these actions were performed on official university or university-mandated premises and during official working hours.

65. As such, Patricia Kraft is entitled to an award of damages.

*Count 5        INVASION OF PRIVACY*

66. Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

67. Patricia Kraft had a reasonable expectation of privacy when using the sole women's bathroom in the Transportation Services Department. Baty violated Patricia Kraft's rights and

14

breached her expectation of privacy by placing a camera in the women's bathroom and recording, viewing and/or playing recordings of Patricia Kraft during the occasions when she used the restroom and in various states of undress, including using the toilet.

68. As a proximate result of the invasion of her privacy, Patricia Kraft has been damaged physically, emotionally, mentally and in her professional abilities.

### Count 6     PREMISES LIABILITY

69. Plaintiff re-alleges and incorporates each and every allegation in this Complaint. TAMU and TAMUS, at all times relevant, owned, operated and controlled the building in which Plaintiff worked.

70. The repeated placement of a camera to record in the women's bathroom on TAMU's and TAMUS's property for more than a period of one year created a defect and dangerous condition on the premises which TAMU and TAMUS knew existed or should have known to exist.

71. TAMU and TAMUS owed a duty to Patricia Kraft, as an employee, to use reasonable and ordinary care to keep the property safe and to warn of dangerous conditions known to them, including the duty to make reasonable inspections for dangerous conditions.

72. The placement of a camera in a women's bathroom is foreseeable and should have been discovered by TAMU and TAMUS through a reasonable, regular inspection of its property.

73. TAMU and TAMUS failure and breach of their duty to Patricia Kraft by not making reasonable inspections of its property over the course of at least one year breached their duty to Patricia Kraft and is a proximate cause of injuries to her as set forth herein.

## V. DAMAGES AND REMEDIES

74. As detailed above, Plaintiffs requests that they have judgment against Defendants for actual damages, including but not limited to:

    a. An award of damages to Plaintiff, including, damages available under Title VII and any other applicable law, including:

    b. Mental anguish;

    c. Reasonable and necessary medical expenses;

    d. Earning capacity lost;

    e. Pain and mental anguish;

    f. Pre-judgment interest;

    g. Post judgment interest;

    h. An award of litigation costs and expenses, including reasonable attorney's fees; and

    i. any and all other remedies at law and in equity as this Honorable Court finds fair and just.

75. All conditions precedent to Plaintiffs' rights to recovery have occurred or have been fulfilled.

## VI. PRESERVATION OF EVIDENCE

76. Plaintiff hereby requests and demands that Defendants and their agents, attorneys, and insurers preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including but not limited to statements, photographs, videotapes, audiotapes, recordings, business or medical records, bills, estimates, invoices, checks, measurements, equipment, vehicles, correspondence,


memoranda, files, facsimiles, email, voice-mail, text messages, or cellular telephone records. Failure to maintain such items will constitute "spoliation" of the evidence and may subject Defendants to sanctions.

### VII.  JURY DEMAND

77. Plaintiff demands a trial by jury.

### VIII.  PRAYER

78. For the reasons stated above, Plaintiff respectfully requests that Defendants Texas A&M University, Texas A&M University Systems and Peter David Baty be duly cited to appear and answer herein, and that Plaintiff have and recover of Defendants judgment for actual damages, attorney's fees, expert fees, pre- and post-judgment interest, costs of court, and such other and further relief to which she may be entitled at law or in equity.

Respectfully Submitted, this the 24th day of November, 2020,

**ROBERT G. TAYLOR, II, P.C.**

*/s/ Robert G. Taylor, III (Trey)*
**Robert G. Taylor, III (Trey)**
**Attorney in charge**
Federal ID No. 18950
State Bar No. 19721100
2040 North Loop West, Suite 104
Houston, Texas 77018
ttaylor@rgtaylorlaw.com
Telephone: 713-654-7799
Facsimile: 713-654-7814

*Attorneys for Plaintiff*