United States District Court
Southern District of Texas
**ENTERED**
July 17, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA KRAFT, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:20-cv-04015 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| TEXAS A&M | § | |
| UNIVERSITY and | § | |
| PETER DAVID BATY, | § | |
| Defendants. | § | |

**OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT**

The motion by Defendant Texas A&M University for summary judgment is granted. Dkt 68.

1. Background

Plaintiff Patricia Kraft was employed by the Transportation Services Department at Texas A&M from May 2017 to August 2019. Dkt 71-2 at 2. Defendant Peter David Baty was the training supervisor for the Department at that time, and he supervised Kraft's training as a driver at the start of her employment. Id at 3. Kraft brings a Title VII claim against Baty and Defendant Texas A&M University, alleging a hostile work environment in which Baty secretly recorded women in a restroom using a hidden camera. Dkt 32 at 3–12.

Supported primarily by her own affidavit, Kraft asserts that Baty held supervisory status over her even after her training. She says that tasks assigned by Baty took priority over her routine duties; that Baty's office was located near those of senior staff; and that she "understood" Baty to have the power to promote or reprimand her and to

evaluate drivers using a "ride check," which could lead to reprimand. Dkt 71-2 at 3–4. Aside from her affidavit, Kraft submits documents indicating that Baty supervised training for over three hundred employees and that his salary exceeded those of other Transportation Services staff. Dkts 71-3 at 25–27, 71-9 at 3 & 71-12 at 2.

In her affidavit, Kraft also details misconduct by Baty during her employment. She says that Baty made insensitive, sexualized remarks to her and other women and also frequently stared at her breasts. Dkts 71-2 at 4–5 & 32 at 3, 12, 14–16. According to Kraft, University officials were made aware of this behavior by complaints made against Baty before Kraft joined Transportation Services. Dkt 71 at 17–19, 24. The deposition of the Director of Transportation Services confirms that Baty had "conversations" with his superiors regarding this behavior, and that none of these conversations resulted in his termination. Dkt 71-3 at 110–112, 116. But no evidence indicates that any misbehavior by Baty was reported to the University after 2015—until, of course, a hidden camera was discovered that directly relates to this lawsuit. Dkts 71-2 at 5 & 71-3 at 113–14.

In May 2019, the University discovered that Baty had surreptitiously placed a camera in a women's restroom. Dkt 68 at 7. This discovery resulted from an investigation into the theft of a set of vehicle keys. When reviewing surveillance footage as part of this investigation, Transportation Services employees observed Baty entering and exiting a women's restroom. Dkts 32 at 9 & 68 at 7. Upon examining the restroom, officials found a hidden camera disguised as a USB charger. Dkt 68 at 7. University officials immediately called the police to investigate and suspended Baty. Dkts 32 at 10–11 & 68 at 7.

Kraft's employment was terminated shortly after the discovery of the camera. She then brought this suit alleging Title VII violations against the University and Baty on a theory of a hostile work environment. See Dkts 1 & 32.

A motion by the University to dismiss the action was denied at a hearing in December 2021, with it being noted

that discovery was needed to determine (i) whether Baty was Kraft's supervisor at the relevant time, and (ii) whether the University knew or should have known that surveillance was taking place before the camera was discovered. Dkt 55. Limited discovery was permitted on these two issues. In granting such discovery, it was understood that the viability of the Title VII claim against the University hinged on these issues alone. See Dkt 61 at 24–30, 34, 54–55.

2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for

summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

### 3. Analysis

To prevail on a hostile-work-environment claim, Kraft must demonstrate that (i) she was a member of a protected group, (ii) she suffered harassment, (iii) the harassment was based on sex, (iv) the harassment affected a term, condition, or privilege of employment, and (v) Texas A&M knew or should have known of the harassment but failed to properly address it. *Hernandez v Yellow Transportation Inc*, 670 F3d 644, 654 (5th Cir 2012). The fifth factor needn't be proven if the harasser is a supervisor with immediate or higher authority over the harassment victim. *Watts v Kroger Co*, 170 F3d 505, 509 (5th Cir 1999).

The only issues here pertain to the supervisory status of Baty and the attendant knowledge of the University. At least one of these needs to be established for Kraft's Title VII claim against the University to proceed.

#### a. Supervisory status of Baty

Kraft fails to create a fact issue as to the supervisory status of Baty.

The standard for classifying a supervisor under Title VII considers whether an employee was "empowered by the employer to take tangible employment actions against the victim." *Vance v Ball State University*, 570 US 421, 424 (2013). The ability to alter a worker's employment conditions is the critical inquiry. Merely giving directions, assigning tasks, evaluating, or scheduling employees will not create supervisory status. See *Morrow v Kroger Ltd Partnership I*, 681 F Appx 377, 380 (5th Cir 2017); *Spencer v Schmidt Elec Co*, 576 F Appx 442, 447–48 (5th Cir 2014).

4

Almost all of the support for Kraft's argument that Baty was her supervisor comes from her affidavit. This includes her reported understanding that (i) tasks assigned by Baty took priority over ordinary tasks, (ii) he had the power to promote or reprimand her, and (iii) he had the power to evaluate and potentially reprimand drivers using a "ride check." Dkt 71-2 at 3. Statements such as these are insufficient to create a genuine issue of material fact where they are contained only in the complainant's affidavit without confirming support elsewhere. See *Mickey v Texas Co-op Ext*, 2007 WL 2220978, \*8 (SD Tex), citing *Young v Equifax Credit Info Services Inc*, 294 F3d 31, 639 (5th Cir 2002). And beyond these statements, Kraft offers no evidence that Baty directly supervised her or set any terms of her employment in the relevant period. For instance, evidence concerning the location of Baty's office and his salary fails to demonstrate that he was able to take tangible employment action against Kraft during the relevant time.

For its part, the University offers ample evidence that Baty supervised only trainee drivers and other training staff. Dkt 68 at 11; see also Dkts 68-1 at 8 & 68-2 at 15. It also offers evidence that Kraft's direct supervisor following her training was Sean Landolt, and that he—not Baty—was responsible for all reprimands, including her termination. Dkts 68-4 (termination form) & 68-5 (written reprimand). And it submits evidence showing that Baty had no power to promote drivers or otherwise alter their employment status. See Dkts 72-2 at 7–11 & 72-3 at 6–7. This evidence shows that Baty was not, in fact, Kraft's supervisor, notwithstanding Kraft's supposed understanding otherwise.

Summary judgment will enter on the issue of Baty's supervisory status.

### b. Knowledge of Texas A&M

Kraft also fails to create a fact issue as to the University's knowledge of Baty's surveillance.

5

In the absence of proof that Baty was her supervisor, Kraft must prove that Texas A&M knew or should have known of the camera but failed to properly address it. *Hernandez*, 670 F3d at 654. Kraft presents no evidence demonstrating as much. Rather, she reiterates extensive allegations regarding Baty's negative reputation and behavior around women, that the University knew of this behavior, and that superiors confronted Baty without terminating his employment. Dkt 71 at 17–19, 24. Kraft argues that this reticence to discipline Baty permitted his recording of female staff. Id at 24. But whether that assertion is true or not, it provides no evidence that the recording itself should have been known to the University.

For its part, the University argues that Kraft can't "recast" her allegations to center on behavior other than the placement of the hidden camera. Dkt 72-6. Allegations concerning Baty's past lewd comments in the workplace didn't put it on notice of the possibility that he would place a camera in the women's restroom years later. And the evidence demonstrates that the camera wasn't apparent to staff using the restroom until it was discovered. Dkt 68 at 12–13. When it was finally discovered, officials took appropriate action—confiscating the device, suspending Baty, and notifying the police. Id at 13. Thus, there's no proof that the University had knowledge of the camera before it was discovered. Nor is there any proof that it should have known that Baty would place a camera in the women's restroom. Ibid.

Kraft attempts to salvage her Title VII claim by arguing that sexual comments and other misbehavior by Baty apart from the placement of the camera were sufficient to create a hostile work environment, and that the University knew or should have known of such behavior given past complaints against him. See Dkt 71 at 17–19. But the Supreme Court is adamant that such allegations, taken alone, are insufficient to establish a hostile workplace. For example, see *Faragher v City of Boca Raton*, 524 US 775, 788 (1998): "A recurring point in [our] opinions is that 'simple teasing,' offhand comments, and

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Abundant cases show that not all workplace misconduct, even of a sexual nature, rises to the level of a hostile work environment. See Dkts 41 at 4–6 (collecting citations); see also Dkt 61 at 28–29 (transcript from motion hearing commenting on these cases).

Summary judgment will enter on the issue of the University's knowledge.

4. Conclusion

The motion by Defendant Texas A&M University for summary judgment is GRANTED. Dkt 68.

The claim against the University is DISMISSED WITH PREJUDICE.

Only the claim against Defendant Peter David Baty now remains. He has been served in this matter but hasn't answered or otherwise appeared. Dkt 54.

Plaintiff Patricia Kraft is ORDERED to seek entry of default against Baty by August 1, 2023. Failure to do so will result in dismissal of the claim against him, at which point final judgment will enter, from which appeal may be taken.

SO ORDERED.

Signed on July 17, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge